NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

ELIEZER NONIS,

        Plaintiff,

v.

MIDDLESEX COUNTY SHERIFF'S OFFICE, et al.,

        Defendants.

Civil Action No. 12-4469 (FLW)

**OPINION**

**APPEARANCES:**

Eliezer Nonis
Mid-State Correctional Facility
P.O. Box 866
Wrightstown, NJ  08562
    Plaintiff pro se

**WOLFSON,** District Judge

Plaintiff Eliezer Nonis, a prisoner confined at Mid-State Correctional Facility in Wrightstown, New Jersey, seeks to bring this action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights by various named and fictitious defendants.

At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  Plaintiff's due process claims against the "John Doe" Sheriff's Officer and employees of the Middlesex

County Correctional Center will be permitted to proceed.  The § 1983 claims against the Middlesex County Correctional Center, Robert Wood Johnson University Hospital, and the Hospital staff members will be dismissed with prejudice for failure to state a claim.  All remaining claims, including state-law negligence claims against Robert Wood Johnson University Hospital and its staff members, will be dismissed without prejudice.

I. BACKGROUND

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for purposes of this review.

Plaintiff alleges that he was involved in a car accident on July 18, 2010, after which he was immediately taken to Robert Wood Johnson University Hospital, where he was taken into custody by the Middlesex County Sheriff's Department, and where he was diagnosed as suffering from a broken foot, cracked hip, bruised ribs, dislocated right arm, and unspecified head and neck injuries.  Plaintiff alleges that he was placed in the Trauma - Intensive Care Unit, where he was heavily medicated.

According to Plaintiff, after several attempts by hospital staff at exploratory surgery on his foot, the Sheriff's Officer guarding him began arguing with the nurses to discharge Plaintiff so that he could be taken to the Middlesex County Correctional Center.  Plaintiff alleges that, instead of discharging him, a nurse brought him some paperwork to be transferred to another unit at the hospital, at which point the Sheriff's Officer guarding him rolled Plaintiff out of bed and forced him into a wheelchair.  Plaintiff alleges that he screamed in pain, but that the Sheriff's Officer told Plaintiff to "shut up," that Plaintiff was going to jail whether anyone liked it or not, and that he (the Sheriff's Officer) was tired and bored doing hospital duty.  Plaintiff alleges that the Sheriff's Officer took Plaintiff from the hospital without obtaining any discharge papers,

treatment plan, or medications. Plaintiff alleges that hospital personnel, including unnamed Emergency Room doctors and nurses, should have stopped the Sheriff's Officer from removing Plaintiff from the hospital.

Plaintiff alleges that when the Sheriff's Officer got Plaintiff to the Middlesex County Correctional Center, unnamed jail officials refused to admit Plaintiff without the appropriate medical paperwork, so the Sheriff's Officer left Plaintiff sitting in a wheelchair outside the jail while the Sheriff's Officer returned to the hospital to obtain the required medical paperwork. Plaintiff alleges that, after the Sheriff's Officer returned, unnamed jail officials placed Plaintiff in an isolation cell with no wheelchair or medicine. Plaintiff alleges that he was forced to walk on his broken foot. He alleges that he was given only Motrin for pain and was given no further treatment for his injuries. Plaintiff also alleges that he fell on the cell floor because the toilet was leaking, that an officer saw this and, knowing that Plaintiff was in pain from his injuries, refused to help him and told him to get himself up and back into bed. Plaintiff alleges that his requests to be returned to the hospital were ignored. Finally, Plaintiff alleges that when he was released on bail he immediately went to a hospital where he was told that his injuries were worse and he was admitted for more surgery. Plaintiff claims that he now suffers from chronic pain and is disabled.

Plaintiff names as defendants the Middlesex County Sheriff's Office, Middlesex County Correctional Center, the Middlesex County Correctional Center Medical Department, Robert Wood Johnson University Hospital, and fictitious "John Doe" defendants. Based on the allegations of the Complaint, this Court construes the "John Doe" defendants to include (a) the Sheriff's Officer who removed Plaintiff from the hospital, (b) the Admissions Supervisor and staff of the Middlesex County Correctional Center Medical Department, as well as the

3

correctional officers, who were personally involved in Plaintiff's admission and care while in Middlesex County Correctional Center, and (c) the Robert Wood Johnson University Hospital Emergency Room doctors, nurses, and security staff who failed to prevent the Sheriff's Officer from removing Plaintiff. See Complaint, ¶ 4.

## II. STANDARDS FOR A SUA SPONTE DISMISSAL

Per the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding in forma pauperis, see 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, see 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, see 42 U.S.C. § 1997e. The PLRA directs district courts to sua sponte dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. This action is subject to sua sponte screening for dismissal under 28 U.S.C. § 1915A(b), because he seeks redress against governmental employees and entities, and under 42 U.S.C. § 1997e, because he is bringing claims with respect to prison conditions.

According to the Supreme Court's decision in Ashcroft v. Iqbal, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To survive sua sponte screening for failure to state a claim,[1] the complaint must allege

---

[1] "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. ¶ 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." Schreane v. Seana, 506 F. Spp'x 120, 122 (3d Cir. 2012) (citing Allah v. Seiverling, 229 F.3d 220, 223 (3d Cir. 2000)); Mitchell v. Beard, 492 F. Spp'x 230, 232 (3d Cir. 2012) (discussing 28 U.S.C. § 1997e(c)(1)); Courteau v. United States, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)).

"sufficient factual matter" to show that the claim is facially plausible. Fowler v. UPMS Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Belmont v. MB Inv. Partners, Inc., 708 F.3d 470, 483 n.17 (3d Cir. 2012) (quoting Iqbal, 556 U.S. at 678). Moreover, while pro se pleadings are liberally construed, "pro se litigants still must allege sufficient facts in their complaints to support a claim." Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted) (emphasis added).

Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34 (1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)), cited in Thomaston v. Meyer, No. 12-4563, 2013 WL 2420891, *2 n.1 (3d Cir. June 5, 2013); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

### III. SECTION 1983 ACTIONS

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation

5

was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

IV. ANALYSIS

A. Claims Against Middlesex County Correctional Center

Plaintiff names as defendants both the Middlesex County Correctional Center and the Medical Department of the Middlesex County Correctional Center. A jail is not a "person" amenable to suit under 42 U.S.C. § 1983. See, e.g., Parrish v. Aramark Foods, Inc., No. 11-5556, 2012 WL 1118672, *3 (D.N.J. April 2, 2012) (collecting cases); Fischer v. Cahill, 474 F.2d 991, 992 (3d Cir. 1973) (New Jersey Prison Medical Department is not a "person" under § 1983). Accordingly, this Court will dismiss with prejudice all claims against the Middlesex County Correctional Center and the Medical Department of the Middlesex County Correctional Center.

B. Claims Against Middlesex County Sheriff's Office

Plaintiff names as a defendant the Middlesex County Sheriff's Office. Local government units and supervisors, however, are not liable under § 1983 solely on a theory of respondeat superior. See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v. New York City Department of Social Services, 436 U.S. 658, 690-91, 694 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); Mulholland v. Government County of Berks, Pa., 706 F.3d 227, 237 (3d Cir. 2013). "'A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal

6

direction or of actual knowledge and acquiescence.'" Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted)).

To establish municipal liability under § 1983, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990), quoted in Watson v. Abington Twp., 478 F.3d 144, 156 (3d Cir. 2007). A plaintiff must demonstrate that, through its deliberate conduct, the municipality was the moving force behind the plaintiff's injury. Monell, 436 U.S. at 689.

> A policy is made "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict." A custom is an act "that has not been formally approved by an appropriate decisionmaker," but that is "so widespread as to have the force of law.

Natale, 318 F.3d at 584 (citations omitted).

Here, there are no factual allegations to suggest that the actions of any of the individuals who had personal involvement in Plaintiff's removal from the hospital, admission to the jail, or care while in the jail were based upon any policy or custom of the Middlesex County Sheriff's Office. Accordingly, this Court will dismiss without prejudice the claims against the Middlesex County Sheriff's Office.

C.      Claims Against "John Doe" Officers

Plaintiff alleges that a "John Doe" Sheriff's Officer removed him from the hospital against medical advice and left him alone in a wheelchair outside the jail, subjecting him to great pain and further damage to his broken foot. He alleges that other "John Doe" correctional officers or employees of the Medical Department of Middlesex County Correctional Center wrongfully admitted him to the jail and/or its medical department, instead of returning him to the

7

hospital, and then failed to provide appropriate treatment, knowing that his injuries were so severe he should have been in a hospital. Finally, Plaintiff alleges that a "John Doe" correctional officer, knowing of Plaintiff's injuries and pain, refused to help him after he fell in his cell. He alleges that these actions subjected him to pain, delay in treatment, and further injuries. These claims will be permitted to proceed.

Criminal pretrial detainees retain liberty interests firmly grounded in the Due Process Clause of the Fourteenth Amendment. See Hubbard v. Taylor, 399 F.3d 150 (3d Cir. 2005); Fuentes v. Wagner, 206 F.3d 335, 341 (3d Cir. 2000). Analysis of whether such a detainee has been deprived of liberty without due process is governed by the standards set out by the Supreme Court in Bell v. Wolfish, 441 U.S. 520 (1979). Hubbard, 399 F.3d at 157-60, 164-67; Fuentes, 206 F.3d at 341-42.

> In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee. ...
>
> Not every disability imposed during pretrial detention amounts to "punishment" in the constitutional sense, however. …
>
> A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]." Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal--if it is arbitrary or purposeless--a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees. ...

441 U.S. at 535-39 (citations omitted). The Court further explained that the government has legitimate interests that stem from its need to maintain security and order at the detention facility.

"Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." 441 U.S. at 540. Retribution and deterrence, however, are not legitimate nonpunitive governmental objectives, 441 U.S. at 539 n.20, nor are grossly exaggerated responses to genuine security considerations. Id. at 539 n.20, 561-62.

Moreover, the due process rights of a pretrial detainee, to medical care, are "at least as great as the Eighth Amendment protections available to a convicted prisoner." City of Revere v. Massachusetts General Hosp., 463 U.S. 239, 244-45 (1983) (citing, inter alia, Bell v. Wolfish). The Eighth Amendment proscription against cruel and unusual punishment is violated when prison officials are deliberately indifferent[2] to a prisoner's serious medical needs.[3] Estelle v. Gamble, 429 U.S. 97, 103-04 (1976). "Where prison authorities deny reasonable requests for medical treatment, …, and such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury,' deliberate indifference is manifest. Similarly, where 'knowledge of the need for medical care [is accompanied by the] ... intentional refusal to provide that care,' the deliberate indifference standard has been met. ... Finally, deliberate indifference is demonstrated '[w]hen ... prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need

---

[2] "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. Farmer v. Brennan, 511 U.S. 825, 837-38 (1994).

[3] Serious medical needs include those that have been diagnosed by a physician as requiring treatment or that are so obvious that a lay person would recognize the necessity for a doctor's attention, and those conditions which, if untreated, would result in lifelong handicap or permanent loss. Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

for such treatment.'" Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346-47 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988) (citations omitted). "Short of absolute denial, 'if necessary medical treatment [i]s ... delayed for non-medical reasons, a case of deliberate indifference has been made out." Id. (citations omitted). "Deliberate indifference is also evident where prison officials erect arbitrary and burdensome procedures that 'result[] in interminable delays and outright denials of medical care to suffering inmates.'" Id. at 347 (citation omitted).

A prisoner's subjective dissatisfaction with his medical care, however, does not in itself indicate deliberate indifference. Andrews v. Camden County, 95 F.Supp.2d 217, 228 (D.N.J. 2000); Peterson v. Davis, 551 F.Supp. 137, 145 (D. Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984). Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims." White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990).

Beyond these parameters, the Court of Appeals for the Third Circuit has not delineated the standard applicable to claims that denial or inadequacy of medical care violates a detainee's right to due process. See, e.g., Carson v. Mulvihill, 488 F.App'x 554, 561 (3d Cir. 2012) ("We need not resolve today which standard [Bell or Estelle] applies."); King v. County of Gloucester, 302 F.App'x 92, 95 (3d Cir. 2008) ("In assessing the denial of medical care to a pretrial detainee, … [the] inquiry involves an indirect application of the Eighth Amendment deliberate indifference standard.").

Here, a broken foot certainly presents a "serious medical need." In addition, Plaintiff's allegations that the described "John Doe" officers removed him from the hospital against medical advice, admitted him to the Middlesex County Correctional Center and then refused to treat the break, and refused to assist him when he fell, are all sufficient to suggest "deliberate indifference." Accordingly, these claims may proceed as against the individual officers

personally involved in these incidents.

D.     Claims Against Robert Wood Johnson Univ. Hospital and Staff

Plaintiff alleges that Robert Wood Johnson University Hospital and "John Doe" doctors, nurses, and security personnel are liable to him for failing to prevent the "John Doe" Sheriff's Officer from removing him from the hospital.

The facts alleged do not suggest that Robert Wood Johnson University Hospital or its unnamed staff members are "state actors" for purposes of § 1983. In other actions, the hospital has established that it is a private, non-profit, academic health center. See, e.g., Robert Wood Johnson University Hosp. v. Thompson, 297 F.3d 273, 278 (3d Cir. 2002); U.S. ex rel. Monahan v. Robert Wood Johnson University Hosp., Civil Action Nos. 02-5702, 08-1265, 2009 WL 1288962, *1 (D.N.J. May 7, 2009); New Jersey Ass'n of Health Care Facilities, Inc. v. Gibbs, 838 F.Supp. 881, 920 n.27 (D.N.J. 1993). Cf. Blum v. Yaretsky, 457 U.S. 991, 1010-11 (1982) (holding that the fact that a state might highly regulate nursing homes, or pay the medical expenses of a substantial number of patients, does not convert the actions of the nursing homes into "state" action). Accordingly, all claims asserted against Robert Wood Johnson University Hospital and its staff under § 1983 will be dismissed with prejudice. Because the § 1983 medical-care claims against the fictitious Sheriff's Officer and Correctional Officers are proceeding, however, this Court will consider whether it should exercise supplemental jurisdiction over Plaintiff's state law negligence claim against Robert Wood Johnson University Hospital or its unnamed staff members. See 28 U.S.C. § 1367(a), (c).

"'[T]o sustain a common law cause of action in negligence' under New Jersey law, 'a plaintiff must prove four core elements: (1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages.'" Aymonier v. U.S., 432 F.App'x 66, 67 (3d Cir.

11

2011) (quoting Polzo v. Cnty of Essex, 196 N.J. 569, 584 (2008)). The question of whether a duty exists is a matter of law properly decided by the court and is largely a question of fairness or policy. See Strachan v. John F. Kennedy Memorial Hospital, 109 N.J. 523, 529 (1988). "'The inquiry involves a weighing of the relationship of the parties, the nature of the risk, and the public interest in the proposed solution.'" Id. (quoting Kelly v. Gwinnell, 96 N.J. 538, 544 (1984) and Goldberg v. Housing Auth. of Newark, 38 N.J. 578, 583 (1962)).

Traditionally, some courts have held that the "special relationship" between hospital and patient, as well as between physician and patient, "was considered to give rise to a duty to protect the patient from foreseeable criminal acts of third persons." Wnek v. City of Philadelphia, Civil Action No. 05-3065, 2007 WL 1410361, *5 (E.D. Pa. May 11, 2007) (emphasis added) (collecting cases); see also Ass'n. of Washington Public Hosp. Districts, 79 F.Supp.2d 1219, 1225-26 (W.D. Wash. 1999) (collecting cases). Cf. Sandra M. V. St. Luke's Roosevelt Hosp. Center, 33 N.Y. App. Div. 3d 875, 878 (2006) (holding that a hospital has a duty to protect patients from the reasonably foreseeable criminal or tortious acts of third persons). At least one court has rejected the suggestion, however, that where a patient was brought to the hospital in police custody, and the patient remained in police custody, the hospital had a duty to protect the patient from the police officer who was his custodian. Wnek, 2007 WL 1410361 at *5-*6. "Sustaining such an argument would place hospitals in the unreasonable and untenable position of having to monitor and supervise police activity." Id. at *6.

This Court has located no New Jersey state court opinions, however, addressing whether hospitals and their staff have such a duty to protect their patients from the criminal or tortious actions of third parties, in general, or from the actions of police, in particular. As one of the factors to be considered in determining the existence of such a duty is "the public interest," this

12

Court finds that resolution of this question raises a "novel" and "complex" issue of state law better left to the New Jersey state courts. Accordingly, this Court will decline to exercise jurisdiction over Plaintiff's state-law negligence claims and will dismiss those claims without prejudice. See 28 U.S.C. § 1367(c)(1); Doherty v. Teamsters Pension Trust Fund of Philadelphia and Vicinity, 142 F. App'x 573 (3d Cir. 2005) (holding that District Court should have declined to exercise supplemental jurisdiction under § 1367(c) over novel and complex state-law issue regarding legal malpractice claim). Pursuant to 28 U.S.C. § 1367(d), Plaintiff may refile his state-law negligence claims against Robert Wood Johnson University Hospital and its "John Doe" doctors, nurses, and security personnel, in state court within 30 days, during which time frame the statute of limitations is tolled.

V. CONCLUSION

For the reasons set forth above, the due process medical-care claim may proceed against the fictitious defendants who are officers of the Middlesex County Sheriff's Office or Middlesex County Correctional Center. The § 1983 claims against the Middlesex County Correctional Center, Robert Wood Johnson University Hospital, and the Hospital's "John Doe" doctors, nurses, and security personnel, will be dismissed with prejudice, pursuant to 28 U.S.C. § 1915A(b)(1) and 42 U.S.C. § 1997e(c), for failure to state a claim. All remaining claims will be dismissed without prejudice. However, because it is conceivable that Plaintiff may be able to supplement his pleading with facts sufficient to overcome the deficiencies of the Complaint with respect to the claim against the Middlesex County Sheriff's Office, the Court will grant Plaintiff leave to file an amended complaint, solely with respect to that claim.[4]

---

[4] Plaintiff should note that when an amended complaint is filed, it supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading. See West Run Student Housing Associates, LLC v. Huntington National Bank,

13

An appropriate order follows.

                                                s/Freda L. Wolfson
                                                Freda L. Wolfson
                                                United States District Judge

Dated: September 30, 2014

---

Civil Action No. 12-2430, 2013 WL 1338986, *5 (3d Cir. Apr. 4, 2013) (collecting cases). See also 6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1476 (3d ed. 2008). To avoid confusion, the safer practice is to submit an amended complaint that is complete in itself. Id.